| FD-1023 | FEDERAL BUREAU OF INVESTIGATION<br>CHS REPORTING DOCUMENT |  Official Record |

## HEADER

**Source ID:** ▮7465
**Date:** 01/06/2020
**Case Agent Name:** SMITH, MATTHEW P
**Field Office/Division:** New Orleans
**Squad:** Squad 4

## SOURCE REPORTING

**Date of Contact:** 12/13/2019

**List all present including yourself (do not include the CHS):**
SA Matthew Smith, SA Brandon Brown, SA Robert Orvin, AUSA Brian Klebba, AUSA Edward Rivera, AUSA Shirin Hakimzadeh, AUSA Jared Hasten, AUSA Maria Carboni

**Type of Contact:** In Person

- **Country:** UNITED STATES
- **City:** New Orleans
- **State:** Louisiana

**Date of Report:** 12/13/2019

**Substantive Case File Number**
▮

**Check here if additional reporting is in Echo**
No

**Source Reporting:**
CHS was advised if CHS wanted an Attorney present during this reporting, CHS could have one appointed.

CHS got involved in staging accidents with ▮▮▮ who was about 34 or 35 at the time. ▮▮▮ Together they first staged accidents for ▮▮▮ worked as a spotter in the staged accidents with CHS until his death. ▮▮▮ owned a body shop and would use a client's car to help with the staged accidents. After ▮▮▮ died, CHS used ▮▮▮ as a spotter.

CHS met SEAN ALFORTISH (ALFORTISH) through ▮▮▮ at ALFORTISH's office. CHS believed ALFORTISH was an Attorney for about six or seven months. CHS met VANESSA MOTTA (MOTTA) later. CHS also met ▮▮▮ there in around 2017. When CHS brought a case to ALFORTISH, ALFORTISH would call ▮▮▮ or MOTTA and say it was for them. Sometimes CHS had to deal with upset cleints for ALFORTISH.

**GOVERNMENT EXHIBIT B**

| FD-1023 | **FEDERAL BUREAU OF INVESTIGATION**<br>CHS REPORTING DOCUMENT | OFFICIAL RECORD |
|---|---|---|

ALFORTISH always paid CHS for staged accidents with checks after CHS brought the clients to his office. CHS initially cashed the checks but later opened a checking account. CHS did not deposit cash from staged accidents into the checking account. CHS always dealt with ALFORTISH, but MOTTA was present at times. CHS initially did not know ALFORTISH owned construction companies.

CHS never worked construction for ALFORTISH. ALFORTISH never gave CHS a 1099.

ALFORTISH found most of the staged accident participants. ALFORTISH would tell CHS to meet the participants under the Claiborne bridge next to Cajun Seafood. CHS and ALFORTISH communicated via text and telephone calls. ALFORTISH used coded language to discuss the staged accident participants, saying he had a certain number of "horses" for CHS and would provide CHS with the phone number of one of them.

CHS selected the locations for the accidents, preferring between Kenner and LaPlace and I-10 East to Bullard Ave. If the tractor-trailer kept driving after an accident, CHS flagged it down, although sometimes police did as well. CHS told participants to get in the driver's seat and call 911 after CHS got out of the vehicle. After the accidents, CHS told participants to meet CHS at the Claiborne bridge the following day at 10am. After meeting, the participants followed CHS to ALFORTISH's office where they met with ALFORTISH rather than MOTTA or ▮▮▮. ALFORTISH told participants if they had surgery, they would receive more money for the settlement. CHS stayed at the office during the initial meeting. Sometimes participants backed out after being in a staged accident and did not sue.

ALFORTISH told CHS staging an accident with four passengers raised red flags. ALFORTISH preferred local police to respond to an accident rather than state police. CHS usually told ALFORTISH about staging an accident after it had occurred rather than before.

| FD-1023 | **FEDERAL BUREAU OF INVESTIGATION**<br>CHS REPORTING DOCUMENT | OFFICIAL RECORD |
|---|---|---|

CHS may have last staged an accident for ALFORTISH in Summer 2019. ALFORTISH then told CHS to chill out and they would start again after the new year.

Regarding the accident in which CHS was a participant on October 10, 2015, ALFORTISH told CHS it was possible to get $1.2M as a settlement, but CHS declined because CHS did not want to go to federal court. CHS was represented by MOTTA and was ultimately awarded a settlement of $650,000, but only received $100,000 because of legal fees and medical expenses. CHS saw the associated medical bills and complained to ALFORTISH who said he would take care of it. ▮▮▮▮ initially represented CHS, but CHS felt ▮▮ was moving too slowly on the case, so CHS took it to ALFORTISH, with whom CHS already worked. ▮▮▮▮ and ALFORTISH do not like each other.

The surgery performed on CHS helped pain CHS experienced prior to the staged accident. The accident did make the pain worse. ALFORTISH referred CHS to ▮▮▮▮

CHS knows of two or three other "copycats" staging accidents. ▮▮▮▮ was a runner for ALFORTISH. CHS knows of a ▮▮ who was an "old dope fiend."

CHS always exited the vehicle after a staged accident on the passenger side so the truck driver would not see CHS.

CHS knows RYAN HARRIS (HARRIS), but was not involved in HARRIS's staged accident. HARRIS may have owned a body shop. HARRIS asked CHS for ALFORTISH's telephone number and CHS gave him the office number.

▮▮▮▮ family had a bunch of accidents.

| FD-1023 | FEDERAL BUREAU OF INVESTIGATION<br>CHS REPORTING DOCUMENT |  OFFICIAL RECORD |
|---|---|---|

CHS staged an accident with a bus in addition to the one in which CHS was a participant.

CHS sometimes used cars that were already damaged for staged accidents, but always had a collision rather than simply claiming to have had one.

CHS staged about 25 accidents for ▮▮▮▮▮▮▮▮ who paid cash.

CHS staged about 10 accidents for ▮▮▮▮▮, who paid via check from Whitney Bank. ▮▮▮ paid $500 per person.

**Synopsis:**
CHS reporting on fraudulent accidents.

---

**SIGNATURE**

Submitted By          mpsmith (SMITH, MATTHEW)                    Mon, 6 Jan 2020 17:25:53 -06:00
First Level Approved By    JDLOCKETT (Lockett, Jeffrey)              Fri, 10 Jan 2020 08:54:12 -06:00

US-072-00003343