UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 24-105

RYAN HARRIS, ET AL.                         SECTION: D (1)

## ORDER AND REASONS

Before the Court is the Government's Notice Pursuant to Federal Rule of Evidence 404(b).[1]  Defendants, Sean Alfortish and Leon Parker, oppose the Notice,[2] and the Government has filed a Reply.[3]

The Court heard oral argument on the Government's Notice on May 19, 2026, after which the Court took the matter under advisement.[4]

After careful consideration of the parties' memoranda, the record, the applicable law, and the arguments made by counsel during the May 19, 2026 oral argument, the Court finds that evidence regarding Alfortish's 2011 *conviction* is not admissible as intrinsic evidence, but that evidence of Alfortish's *disbarment* is admissible as intrinsic evidence.  The Court further finds that evidence of Parker's physical abuse of co-conspirator Ryan Harris' mother is admissible as intrinsic evidence, but that evidence of Parker's 2010 arrest for a 2005 murder and arson, while intrinsic, is not admissible under Federal Rule of Evidence 403.

---

[1] R. Doc. 807.
[2] R. Docs. 823 & 824.
[3] R. Doc. 830.
[4] R. Doc. 843.  During oral argument, the Government pointed out that its filing was simply a "Notice" pursuant to the Scheduling Order.  *See* R. Doc. 426 at p. 3.  While the Government is correct, the Court finds it appropriate to construe it as a motion and issue this Order and Reasons.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[5]

This case involves allegations of a years-long scheme by over a dozen individuals to stage automobile collisions in the New Orleans metropolitan area and file fraudulent insurance claims and fraudulent lawsuits based on the staged collisions.[6] According to the Government, Cornelius Garrison, one of the "slammers" who was paid to stage collisions, began covertly cooperating with the federal government concerning the staged automobile collisions in October 2019.[7] On September 18, 2020, a federal grand jury in the Eastern District of Louisiana charged nine individuals in a seven-count indictment related to the staged collisions in criminal matter *United States of America v. Cornelius Garrison, et al.*[8] Four days later, on September 22, 2020, Garrison was murdered.[9]

Defendants, Sean Alfortish and Leon Parker, have been charged in a seventeen-count third superseding indictment with crimes stemming from the staged collision scheme as well as crimes involving Garrison's death.[10] Alfortish and Parker are charged with conspiracy to commit mail and wire fraud, Parker is charged with one count of mail fraud, Alfortish is charged with one count of mail fraud, Alfortish and Parker are charged together with one count of mail fraud, Alfortish is charged with obstruction of justice and witness tampering as to Garrison, and Alfortish and

---

[5] In the interest of judicial economy, and because the factual background of this case was extensively detailed in several prior Orders and Reasons issued by this Court (*See* R. Docs. 357, 481, 489, 641, 647, & 692), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.

[6] R. Doc. 256.  *See* R. Docs. 1 & 78.

[7] R. Doc. 1 at p. 2, ¶ 2; R. Doc. 78 at p. 3, ¶ 10; R. Doc. 256 at p. 3, ¶ 10 & p. 6, ¶ 21.

[8] *See* R. Doc. 1 in *United States v. Garrison, et al.*, Crim. A. No. 20-92-SSV-KWR (E.D. La.).

[9] R. Doc. 1 at p. 2, ¶ 4; R. Doc. 78 at p. 21, ¶ 4; R. Doc. 256 at pp. 20–21.

[10] R. Doc. 517.

Parker are charged with conspiracy to commit witness tampering through murder, witness tampering through murder, conspiracy to retaliate against a witness through murder, retaliation against a witness through murder, and causing death through use of a firearm. [11]   Alfortish is also charged with obstruction of justice and subornation of perjury for allegedly offering to pay a witness to provide false testimony during a deposition and procuring false testimony. [12]   In March 2026, defendants' co-conspirators, Vanessa Motta, Motta law, LLC, Jason F. Giles, the King Firm, LLC, and Diaminike F. Stalbert, were convicted of all but one of the counts against them in the third superseding indictment. [13]

On April 20, 2026, the Government filed a Notice Pursuant to Federal Rule of Evidence 404(b), asserting that evidence regarding Alfortish's 2011 conviction for conspiracy to commit mail fraud, health care fraud, and fraud in connection with identification documents and his subsequent disbarment as an attorney should be admitted at trial as intrinsic evidence that is inextricably intertwined with the story of this case.[14]   The Government contends that Alfortish's disbarment explains why he did not handle the staged accident cases himself and instead "gave" them to his fiancé

---

[11] *Id.*

[12] *Id.* at pp. 26–27.

[13] R. Doc. 787.  The Court previously granted Defendant Sean Alfortish's Motion to Realign Severance by Defendants Rather Than Counts, severing the trial of Alfortish and Parker from the trial of Motta, Motta Law, Giles, The King Firm, and Stalbert.  *See* R. Doc. 726.  During their trial, Motta, Motta Law, LLC, Giles, and the King Firm, LLC were convicted of conspiracy to commit mail and wire fraud, while Stalbert was acquitted on that count; Giles and the King Firm were convicted of mail fraud, obstruction of justice, and witness tampering; Motta and Motta Law were convicted of mail fraud, obstruction of justice, and witness tampering; and Stalbert was convicted for making false statements to the FBI.  *Id.*  *See* R. Doc. 517.

[14] R. Doc. 807 at pp. 1–2.

and co-conspirator, Vanessa Motta.[15]   The Government claims that Alfortish's reputation and disbarment is also the reason why defense attorneys began to suspect fraud when they learned of his involvement in the cases.[16]   The Government likewise asserts that evidence regarding Parker's 2010 arrest for his involvement in an August 16, 2005 murder and arson should be admissible as intrinsic evidence because it explains how co-defendant and co-conspirator, Ryan Harris, knew Parker and provides crucial context for why Harris recruited Parker to participate in the conspiracy to murder Garrison.[17]   The Government relies heavily upon the case, *United States v. Age*, to support its position that the foregoing evidence is intrinsic in this case.[18]   In a footnote in its Notice, the Government further contends that evidence of Parker's physical abuse of Ryan Harris' mother may be elicited to "provide context for why Harris followed Parker's instructions on the night of the murder, and to explain why Harris was initially afraid to cooperate against Parker."[19]

Alfortish counters that the evidence the Government includes in its Notice regarding his fraud conviction is highly prejudicial character evidence that will be offered only to impugn Alfortish's character.[20]   Alfortish argues that the evidence is not intrinsic to the charged offenses, as it concerns the legal consequences of Alfortish's actions, rather than Alfortish's actions.[21]   Alfortish then distinguishes the

---

[15] *Id*. at pp. 1–2 & 13–14.
[16] *Id*. at pp. 1–2 & 13.
[17] *Id*. at pp. 2–3 & 16–17.
[18] *Id*. at pp. 11–13 & 16–17 (citing *United States v. Age*, Crim. A. No. 16-32, 2021 WL 6135570 (E.D. La. Dec. 29, 2021) (Ashe, J.) *aff'd*, 136 F.4th 193, 221 (5th Cir. 2025)).
[19] R. Doc. 807 at p. 17, n. 9.
[20] R. Doc. 823-1 at p. 1.  Alfortish does not dispute either the conviction or the underlying facts which led to the conviction.
[21] *Id*. at pp. 2–4.

three cases cited in support of the Government's position, arguing that those cases involved the defendants' actions, not the legal consequences thereof, and because the "other acts" occurred close in time to the charged offenses.[22] Alfortish further asserts that the evidence is not admissible under Federal Rule of Evidence 404(b) because it is not relevant to any of the legitimate Rule 404(b) purposes, and because any probative value of the evidence is substantially outweighed by its undue prejudice.[23] Finally, Alfortish claims that regardless of whether the evidence is intrinsic or extrinsic, it should be excluded under Fed. R. Evid. 403 as unduly prejudicial.[24]

In response to the Government's Notice regarding the introduction of evidence concerning Parker, Parker denies that he participated in the 2005 murder of Marcel Trudeau.[25] Parker further argues that evidence of his arrest is the type of extrinsic propensity evidence that Rule 404(b) is designed to prevent.[26] While the Government claims that Harris involved Parker in the Garrison murder plot because Harris knew Parker had committed a prior murder, Parker points out that the exhibits submitted by the Government reflect that Harris never told the Government that was the reason he got Parker involved in the murder plot.[27] Parker asserts that this evidence will be offered to show his propensity to commit these crimes, which is what Rule 404(b)(1) prohibits.[28] Parker contends that his alleged involvement in a 2005 murder is in no

---

[22] *Id.* at pp. 3–4 (citing *United States v. Ceballos*, 789 F.3d 607 (5th Cir. 2013); *United States v. Rice*, 607 F.3d 133 (5th Cir. 2010); *Age*, Crim. A. No. 16-32, 2021 WL 6135570).
[23] R. Doc. 823. at pp. 4–6.
[24] *Id.* at p. 6.
[25] R. Doc. 824 at p. 1.
[26] *Id.*
[27] *Id.* at p. 2.
[28] *Id.* at p. 7.

way inextricably intertwined with Garrison's murder, which occurred 15 years later, nor was it part of a single criminal episode or a necessary preliminary to Garrison's murder.[29] Parker points out that it will be uncontested that Harris and Parker knew each other for many years because Parker had been in a long-term relationship with Harris' mother.[30] Parker asserts that the evidence submitted by the Government shows that Harris told the Government that he connected Parker and Alfortish because they both told him that they wanted Garrison dead.[31] Parker claims that, like in the *Age* case, admitting evidence of the 2005 murder would constitute error.[32] Finally, Parker asserts that the evidence of the 2005 murder should be excluded under Fed. R. Evid. 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, waste of time, and presenting cumulative evidence.[33] Regarding the Government's footnote outlining its intent to offer evidence of allegations of domestic violence, Parker submits that the Government should be barred from introducing the evidence because it has not shown that they are intrinsic to any crime in this case.[34]

In response, the Government reiterates the arguments made in in its Notice regarding why the evidence at issue is intrinsic, and maintains that the *Age* case supports its position that the evidence will provide the necessary context for the jury to understand the defendants' conduct, the defendants' relationships with their co-

---

[29] *Id.*
[30] *Id.* at p. 8.
[31] *Id.*
[32] *Id.* at pp. 2-3 & 10–11 (citing *United States v. Age*, 136 F.4th 193, 212 (5th Cir. 2025)).
[33] R. Doc. 824 at pp. 11–13.
[34] *Id.* at p. 13.

conspirators, and the reactions from the attorneys for the insurers when they learned that Alfortish was involved in the fraudulent lawsuits and insurance claims.[35] The Government further asserts that the timing of Alfortish's 2011 conviction and Parker's alleged 2005 murder and arson does not prevent such evidence from being intrinsic to the charged offenses.[36] To the extent Parker argues that the exhibits to the Government's Notice do not support the Government's position that Harris recruited Parker in the instant offense because he was aware of Parker's alleged role in the 2005 murder and arson, the Government asserts that, "whether the agents' notes of their interviews with Harris provide a verbatim preview of Harris' testimony has no bearing on whether the evidence is intrinsic."[37] The Government further explains that it intends to elicit information regarding the 2005 homicide and arson when Harris testifies as to why he approached Parker to help in Garrison's murder, and if Parker attempts to impeach Harris' truthfulness.[38] Finally, the Government asserts that because it has not argued that the evidence at issue is admissible under Fed. R. Evid. 404(b), Parker's reliance on *United States v. Jackson* is misplaced.[39]

## II.   LEGAL STANDARD

Federal Rule of Evidence 404(a)(1) prohibits the use of evidence "of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[40] Under Rule

---

[35] R. Doc. 830 at pp. 1–2 (citing *Age*, 136 F.4th 193, 220–21 (5th Cir. 2025)); R. Doc. 830 at pp. 2–4.
[36] *Id.* at pp. 4–5.
[37] *Id.* at p. 5.
[38] *Id.* at p. 6.
[39] *Id.* at p. 7 (citing *Jackson*, 339 F.3d 349 (5th Cir. 2003)).
[40] Fed. R. Evid. 404(b)(1).

404(b)(2), however, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[41]   "Generally, "other-acts evidence is not admissible to prove a person possessed a particular character or character trait,"[42] or "to show that the defendant is by propensity a probable perpetrator of the crime charged."[43] The admissibility of "other acts" evidence depends upon whether the evidence is intrinsic or extrinsic to the crimes charged in the indictment.

Evidence intrinsic to the charged offense "is generally admissible so that the jury may evaluate all the circumstances under which the defendant acted." [44] According to the Fifth Circuit, evidence is intrinsic, and therefore not limited by Rule 404(b), when: (1) it is inextricably intertwined with the charged offense; (2) both acts are part of the same criminal episode; or (3) the "other act" was a necessary preliminary step toward the completion of the charged crime. [45]   Additionally, "[i]ntrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all of the circumstances under which the defendant acted."[46]  Notably, "where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the

---

[41] Fed. R. Evid. 404(b)(2).

[42] *United States v. Robert*, Case No. 20-61084, 2021 WL 4484983, at *2 (5th Cir. Sept. 30, 2021) (*citing* Fed. R. Evid. 404).

[43] *United States v. Williams*, 708 Fed.Appx. 826, 829 (5th Cir. 2017) (quoting *Old Chief v. United States,* 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)) (citation modified).

[44] *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007) (quoting *United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992)) (citation modified).

[45] *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (citing *Sumlin*, 489 F.3d at 689).

[46] *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quoting *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996); *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)) (citation modified).

Government's proof, such as evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy."[47]

If the challenged evidence is extrinsic to the charged offense, the Court must make a threshold determination regarding whether there is sufficient evidence to show that the defendant committed the "other act."[48] If that requirement is met, extrinsic evidence is admissible if it satisfies the two-prong test set forth in *United States v. Beechum*.[49] First, the Court determines whether the extrinsic evidence is relevant to an issue other than the defendant's character (*i.e.,* motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.).[50] Second, the Court "must determine whether, consistent with Rule 403, the evidence possesses probative value that is not substantially outweighed by its undue prejudice."[51]

## III.   ANALYSIS

In both its Notice and during the oral argument on May 19, 2026, the Government confirmed to the Court that the evidence at issue—Alfortish's prior conviction and disbarment, Parker's abuse towards Harris' mother, and Parker's 2010 arrest for a 2005 murder and arson—should be admitted as intrinsic evidence, and that it has not argued that such evidence should be admitted as extrinsic

---

[47] *United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025) (quoting *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009); *United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998)) (citation modified)

[48] *Sumlin*, 489 F.3d at 691 (citing *Beechum*, 582 F.2d at 913).

[49] *Sumlin*, 489 F.3d at 690–91 (citing *Beechum*, 582 F.2d at 911, 913).

[50] *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (quoting *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003)) (citation modified).

[51] *Crawley*, 533 F.3d at 354 (quoting *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007)) (citation modified).

evidence under Fed. R. Evid. 404(b).  As such, the Court will consider only whether the evidence at issue is admissible as intrinsic to the crimes charged in the third superseding indictment.

### A. Alfortish's fraud conviction and disbarment

To the extent the Government asserts that Alfortish's prior fraud conviction and disbarment are intrinsic to the charged offenses because "Alfortish's reputation as a convicted fraudster preceded him, and it affected the way witnesses in this case behaved in response to the fraudulent lawsuits,"[52] the Court disagrees.  During the oral argument on May 19, 2026, the Court specifically asked counsel for the Government if he was aware of any cases where a court had found this type of character evidence admissible based upon its impact upon a victim.  Counsel for the Government responded that he was not aware of any such cases, and stated that most of the cases concerning intrinsic evidence involve the impact of the evidence on co-conspirators.  The Court is, likewise, unaware of any cases in this Circuit that support the Government's position.  The Fifth Circuit has made clear that, "[i]n the context of a conspiracy, evidence is intrinsic to the underlying offense if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member."[53]  The impact of Alfortish's prior conviction and disbarment upon the defense attorneys litigating lawsuits that were based upon staged collision has no bearing on any of these issues.

---

[52] R. Doc. 807 at p. 13.

[53] *United States v. Ceballos*, 789 F.3d 607, 621 (5th Cir. 2015) (quoting *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009)) (citation modified).

The Court further finds that the *Age* case does not support the Government's position that evidence of Alfortish's prior conviction and disbarment is intrinsic based upon its impact on the defense attorneys in the staged collision litigation. In the *Age* case, the defendants, Louis Age Jr., Louis Age III, Stanton Guillory, and Ronald Wilson, were convicted for their involvement in the murder-for-hire of Milton Womack, a federal witness in a healthcare fraud case involving Age Jr., Ayanna Age, Womack, and others.[54] The Government in that case sought to admit evidence related to Guillory's gang activities that occurred in the months before Womack's murder, arguing that such evidence was intrinsic to how and why Guillory was chosen as the hit-man to assassinate Womack.[55] Another Section of this Court concluded that the pre-Womack murder acts were intrinsic to the crimes charged in the indictment because the acts established, among other things, "(1) why Guillory himself was hired to murder Womack and became a member of the conspiracy; (2) why it was feasible that, with Guillory as the hit-man, Womack would be murdered; (3) the nature of Guillory's relationship with Defendants; and (4) how the conspiracy came about."[56] Unlike in *Age*, the impact of Alfortish's prior conviction and disbarment upon defense attorneys litigating the staged collision cases, subsequent to and as a consequence of the conspiracy, does not establish how the conspiracy came about or why Parker was recruited in the conspiracy to murder Garrison.

---

[54] *United States v. Age*, 136 F.4th 193, 211 (5th Cir. 2025).

[55] *United States v. Age*, Crim. A. No. 16-32, 2021 WL 6135570, at *10 (E.D. La. Dec. 29, 2021).

[56] *Age*, Crim. A. No. 16-32, 2021 WL 6135570, at *11 (citing *United States v. King*, 684 Fed.Appx. 451, 456 (5th Cir. 2017)).

The Government further contends that Alfortish's disbarment explains why he did not handle the staged collision cases himself and instead "gave" them to his fiancé and co-conspirator, Vanessa Motta.[57]  Applying the same law as above, the Court agrees.  The Court finds that evidence of Alfortish's disbarment is intrinsic to the charged offenses because it explains why Alfortish did not litigate the staged collision cases and instead gave them to his fiancé and co-conspirator, Vanessa Motta.  As in *Age*, the Court finds that Alfortish's disbarment is relevant to establish how the conspiracy to commit mail and wire fraud with Motta came about, how it was structured, and the nature of the conspiratorial relationship between Alfortish and Motta.[58]  It is "part and parcel" with the conspiracy.  Specifically, the evidence will support the Government's position that Alfortish paid slammers to cause car accidents and directed the passengers to Motta and Motta Law for representation because he could not litigate their cases as a disbarred attorney.  The Court finds this evidence intrinsic because it is inextricably intertwined with the charged offenses and it "completes the story" of the crime by providing important context regarding Alfortish's role in the conspiracy, as well as the role of his co-conspirators.  It sheds light on the circumstances under which the conspiracy was formed.

To the extent Alfortish asserts that the proffered evidence should be excluded under Fed. R. Evid. 403 because its probative value is substantially outweighed by

---

[57] R. Doc. 807 at p. 1.

[58] *See United States v. King*, 684 Fed.Appx. 451, 456 (5th Cir. 2017) ("The evidence in question was intrinsic to the conspiracy offense and not subject to the requirements of Rule 404(b),because it provided background information necessary for a jury to understand the structure of the conspiracy, the nature of the conspiratorial relationship between Waters and King, and how the conspiracy came about.").

its undue prejudice, the Court agrees that Alfortish's 2011 conviction should be excluded under Rule 403 because the prejudicial nature of the evidence outweighs its probative value. The specifics of the fraud underlying the conviction, which ultimately led to Alfortish's disbarment, may cause jury confusion and cause undue prejudice. The Court, however, finds that evidence regarding Alfortish's disbarment is highly relevant to explain Alfortish's role in the conspiracy to commit mail and wire fraud, and that its probative value outweighs any slight prejudice to Alfortish in admitting the evidence. In reaching this conclusion, the Court is mindful that, "[t]he scope of Rule 403 is narrow and may be applied to exclude evidence only cautiously and sparingly." [59]  Accordingly, the Court concludes that evidence regarding Alfortish's disbarment is admissible as intrinsic evidence, but that evidence regarding Alfortish's 2011 conviction is not intrinsic evidence and is not admissible under Rule 403. Although the Fifth Circuit has indicated that the admission of intrinsic evidence does not require limiting jury instructions, [60] should Alfortish request one, the Court will issue an immediate and specific limiting instruction to the jury when such evidence is introduced regarding the narrow purpose for which they may consider that evidence.

## B. Parker's 2010 arrest for a 2005 murder and arson and Parker's physical abuse of the mother of co-conspirator, Ryan Harris

The Court finds that evidence regarding Parker's 2010 arrest in connection with a 2005 murder and arson is also inextricably intertwined with the charges

---

[59] *United States v. Williams,* 708 Fed.Appx. 826, 831 (5th Cir. 2017) (quoting *United States v. Fields,* 483 F.3d 313, 354 (5th Cir. 2007)) (citation modified).
[60] *United States v. Age,* 136 F.4th 193, 223 n.63 (5th Cir. 2025).

pending against Parker and Alfortish concerning Garrison's murder. As to Garrison's murder, Parker and Alfortish are charged with conspiracy to commit witness tampering through murder, witness tampering through murder, conspiracy to retaliate against a witness through murder, retaliation against a witness through murder, and causing death through use of a firearm.[61] The Fifth Circuit has made clear that, "[i]n a conspiracy case, evidence is considered intrinsic if it is relevant to establish how the conspiracy came about, how it was structured, and how each participant became a member."[62] The Government asserts that evidence regarding Parker's 2010 arrest is relevant because it explains how the conspiracy between Alfortish and Parker came about and how Parker became involved in Garrison's murder. Specifically, the Government claims that the evidence explains why co-conspirator Harris recruited Parker to participate in the conspiracy.

The Court finds two Fifth Circuit opinions helpful in its analysis. In *United States v. King*, the defendant appealed his convictions for conspiracy to manufacture, distribute, and possess with the intent to distribute marijuana, arguing in part that the district court erred in admitting evidence of his prior involvement in a grow operation.[63] The Fifth Circuit found no error in the district court admitting the prior act evidence, finding that it "was intrinsic to the conspiracy offense . . . because it provided background information necessary for a jury to understand the structure of the conspiracy, the nature of the conspiratorial relationship between Waters and

---

[61] R. Doc. 517 at pp. 22–26.
[62] *United States v. King*, 684 Fed.Appx. 451, 456 (5th Cir. 2017) (quoting *United States v. Lokey*, 945 F.2d 825, 834 (5th Cir. 1991)) (citation modified).
[63] *King*, 684 Fed.Appx. at 453, 456.

King, and how the conspiracy came about."[64]  As in *King*, the Court finds that Harris'

alleged knowledge of Parker's 2010 arrest for the 2005 murder and arson will help

the jury understand the conspiratorial relationship between Alfortish, Parker, and

Harris and how their conspiracy came about.

The Court also finds the Fifth Circuit's decision in *United States v. Age*

helpful.[65]  The defendants in *Age* were charged with various crimes arising from the

July 27, 2012 murder of Milton Womack, whom the defendants allegedly conspired

to murder in retaliation for his past cooperation in a Medicare fraud case and to

prevent him from testifying at trial in that matter.[66]  The district court found the

following evidence to be intrinsic: (1) defendants' pre-2005 insurance fraud schemes;

(2) arson relating to a building owned by a defendant; (3) Womack's involvement in

that arson; (4) the 2011 Medicare fraud; (5) defendants' involvement with gang

members in staged accidents and "bogus" insurance claims; (6) a defendant's

leadership role and participation in a shootout with a rival gang where two victims

were killed; (7) a defendant's participation as a gang member in a murder of a rival-

gang member prior to Womack's murder; (8) a July 2012 shootout where a defendant

fired the weapon he used less than three weeks later in Womack's murder; (9) the

fact that defendants hired a co-conspirator as the hit-man because they knew he was

a violent gang member who killed three other individuals and shot at a rival-gang

member; (10) a defendant's "active involvement in unleashing violence" throughout

---

[64] *Id.* at 456.
[65] *United States v. Age*, 136 F.4th 193 (5th Cir. 2025).
[66] *United States v. Age*, Crim. A. No. 16-32, 2021 WL 6135570, at *1 (E.D. La. Dec. 29, 2021).

2012, including the murder of rival-gang members; (11) a defendant's connection with violent street-gang members; (12) defendants' involvement in criminal activities with co-conspirators and other gang members; (13) a defendant's unspecified acts of violence; (14) a defendant's car accident days after Womack's murder in the same vehicle he was driving at the time of the murder; (15) a defendant's efforts to hide the murder weapon and its ultimate transfer to a minor and co-conspirator; (16) a defendant's association with an individual when they were shot at by adversaries; (17) a defendant's financial motive to have the trial in the Medicare fraud case disrupted; and (18) the use of a defendant's company, Houses R Us, as a conduit to obtain cash provided to Womack as "hush" money and to further an insurance fraud scheme.[67]

Regarding the evidence of gang member involvement in a murder, the district court found that evidence of one of the defendant's participation as a gang member in a murder of a rival-gang member in the months before Womack's murder was intrinsic to how and why that defendant was hired to assassinate Womack.[68] The district court reasoned that the prior acts tended to establish, among other things: (1) why a co-conspirator was hired to murder Womack and became a member of the conspiracy; (2) why it was feasible that, with that co-conspirator as the hit-man, Womack would be murdered; (3) the nature of the conspirator's relationship with defendants; and (4) how the conspiracy came about.[69] As such, the district court

---

[67] *Age*, Crim. A. No. 16-32, 2021 WL 6135570 at \*2 & 6–11. The *Age* court further found that the defendants conceded that an additional five acts were admissible as intrinsic evidence. *Id*. at \*6, n.48.
[68] *Id*. at \*10–11.
[69] *Id*. at \*11.

concluded that the prior acts were inextricably intertwined with the crimes charged and served to complete the story of why the defendants would work together.[70] Importantly, in *Age*, the "other" gang-related murder that the Government sought to introduce was alleged to have occurred shortly before the crime for which the defendant was on trial. On appeal, the defendants challenged the admission of this evidence and asserted that the error required a new trial.[71] The Fifth Circuit disagreed.[72] Without deciding whether the evidence was intrinsic or extrinsic, the Fifth Circuit concluded that "any error here was harmless" because the evidence presented at trial, even without the evidence of Guillory's prior murders, was sufficient to convict the defendants of all applicable counts.[73]

Similar to the *Age* case, the Court finds that evidence regarding Parker's relationship with co-conspirator Harris' mother, including possible physical abuse towards her, as well as his 2010 arrest may provide background information that explains how the alleged conspiracy to murder Garrison came about and how Parker got involved in the conspiracy. There seems to be no dispute that Parker and Harris knew each other before Garrison's murder because Parker was in a romantic relationship with Harris' mother "and Parker was something of a father figure to Harris."[74] As the Government points out, however, that does not explain why Harris solicited Parker to meet with Alfortish and arrange Garrison's murder.

---

[70] *Id*.
[71] *United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025).
[72] *Id*.
[73] *Id*. at 221.
[74] R. Doc. 807 at p. 10. *See* R. Doc. 824 at p. 8 ("This is especially so where it will be uncontested that Harris and Mr. Parker knew each other for many years and had many reasons for speaking with each

Although not mentioned by the parties, the Court has already determined that certain statements made by Garrison to law enforcement agents are admissible against Alfortish and Parker under Fed. R. Evid. 804(b)(6) because the Government proved by a preponderance of the evidence that Alfortish and Parker wrongfully caused Garrison's unavailability as a witness in this matter and did so intending that result.[75]   In reaching that conclusion, this Court heard evidence that, prior to Garrison's death, Alfortish and Parker both commented to Harris that Garrison was a "rat" and a "snitch" and that it would be better if Garrison were dead.[76]   In his Opposition brief,  Parker points out that Harris told FBI agents that he put Alfortish and Parker together "because they both wanted to get rid of Garrison."[77]   The fact that Harris' FBI 302s, which the Government submitted in support of its Notice, do not specifically mention that Harris solicited Parker's involvement in Garrison's murder based upon his 2010 arrest for the 2005 murder and arson[78] does not change the Court's conclusion that this evidence may provide relevant background information.   Instead, the information in the FBI 302s goes to the weight the jury gives to the evidence.

Further, although not mentioned by the parties, the district court in *Age* determined that certain evidence was intrinsic and admissible even though the Government intended to develop the evidence through trial testimony.   The

---

other.  Harris already knew Mr. Parker intimately, because Mr. Parker had been in a long-time relationship with Harris's mother.").

[75] R. Doc. 692.
[76] *Id.* at pp. 5, 30, & 34.
[77] R. Doc. 807-3 at p. 1.
[78] *See*, R. Docs. 807-3, 807-4, & 807-6.

defendants in *Age* challenged the admissibility of certain evidence, including two defendants' associations with gang members and three defendants' involvement in narcotics activity, on the basis that, "the Government has not provided any evidence to prove the listed acts," and instead intended to develop such evidence through trial testimony.[79] The *Age* court found evidence regarding defendants' criminal activity with other gang members was "intrinsic to the crimes charged in the indictment" and "admissible as part of the Government's proof" notwithstanding the fact that the evidence would be developed at trial.[80]

This Court reaches the same conclusion with respect to the evidence regarding Parker's physical abuse of Harris' mother and Parker's 2010 arrest, which the Government intends to develop through Harris' trial testimony. The Government has represented that evidence of Parker's 2010 arrest and/or the physical abuse of Harris' mother "will be introduced only in Harris's response to the question, 'Why did you approach Parker to assist in Garrison's murder?'"[81] As such, evidence regarding Parker's 2010 arrest will help to complete the story of Garrison's murder by providing context for how the conspiracy between Alfortish and Parker came about, and it will help the jury evaluate "all of the circumstances under which the defendant acted."[82]

---

[79] *United States v. Age*, Crim. A. No. 16-32, 2021 WL 6135570, at *3 (E.D. La. Dec. 29, 2021) ("Finally, Defendants contend that, because the Government has not provided any evidence to prove the listed acts concerning life-insurance fraud, auto-insurance fraud, and drug dealing, it apparently intends to develop such evidence through Ayanna's testimony, which will lead to extreme and unfair prejudice against them and, as such, it should be excluded.") (footnotes omitted). *See*, *Id.* at *3, n.46 ("*Id.* at 6 (nos. 5, 6, and 27, respectively, of the acts listed in the Government's notice, as supplemented.")).

[80] *Age*, Crim. A. No. 16-32, 2021 WL 6135570 at *11.

[81] R. Doc. 830 at p. 4.

[82] *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quoting *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996); *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)) (citation modified).

This evidence sheds light on the circumstances under which the conspiracy was formed.  As the court in the *Age* case reasoned, "the jury is not expected to understand, make factual determinations concerning, and come to a verdict on the crimes charge in a vacuum; they are entitled to know the facts, circumstances, and background of the crimes charged."[83]  As such, evidence regarding Parker's 2010 arrest and his alleged physical abuse of Harris' mother constitute intrinsic evidence.

Nonetheless, the Court finds that evidence regarding an allegation of Parker's involvement in a murder that occurred over a decade earlier should be excluded under Federal Rule of Evidence 403.  To be clear, Parker was arrested yet never charged and never convicted of this earlier crime.  Thus, the evidence is no more than the fact that he was arrested for a murder that was committed in 2005.  Allowing evidence of this crime would truly opened this case up to yet another "trial within a trial," and one involving murder.  Further, and importantly, the Court finds that the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, and undue delay, which may not adequately be addressed by a limiting instruction.  The Court remains mindful that exclusion of evidence under Rule 403 should occur sparingly, but believes this evidence is appropriate to be excluded under Rule 403.

Those Rule 403 concerns are not raised as to evidence of Parker's physical abuse of Harris' mother, which allegedly occurred within the time period of the conspiracy and while Parker was acting as a "father figure" to Harris.  The

---

[83] *United States v. Age*, Crim. A. No. 16-32, 2021 WL 6135570, at *7 (E.D. La. Dec. 29, 2021).

Government claims that if the information regarding Harris' mother is elicited during Harris' testimony at trial, it will not be presented for propensity and instead "will be used to explain Harris's relationship with Parker, to provide context for why Harris followed Parker's instructions on the night of the murder, and to explain why Harris was initially afraid to cooperate against Parker."[84] The Court agrees. Evidence of Parker's physical abuse of Harris' mother, if developed during trial, provides the context for Harris' actions with Parker in Garrison's murder. In admitting this evidence as intrinsic, and if requested by Parker, the Court finds it appropriate in this matter to give a cautionary limiting instruction.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that evidence regarding Sean Alfortish's 2011 conviction and evidence regarding Parker's 2010 arrest for a 2005 murder and arson are not admissible at trial as intrinsic evidence.

**IT IS FURTHER ORDERED** that evidence regarding Alfortish's disbarment and evidence that Leon Parker physically abused the mother of co-conspirator, Ryan Harris, are admissible at trial as intrinsic evidence.

New Orleans, Louisiana, July 23, 2026.

**WENDY B. VITTER**
**United States District Judge**

---

[84] R. Doc. 807 at p. 17, n.9.